Argued and submitted September 7, 1993, reversed and remanded for
reconsideration October 12, 1994, petition for review denied February 7, 1995
(320 Or 567)

## MARION COUNTY LAW
## ENFORCEMENT ASSOCIATION,
*Respondent,*

*v.*

## MARION COUNTY
## and Marion County Sheriff,
*Petitioners.*

(UP-101-91; CA A77189)

883 P2d 222

Mark B. Comstock argued the cause for petitioners. With him on the brief was Garrett, Hemann, Robertson, Paulus, Jennings & Comstock, P.C.

John Hoag argued the cause for respondent. With him on the brief was Aitchison, Hoag, Vick & Tarantino.

Before Warren, Presiding Judge, and Edmonds and Landau, Judges.

LANDAU, J.

**LANDAU, J.**

Petitioners, Marion County (County) and the Marion County Sheriff (Sheriff), petition for judicial review of the Employment Relations Board's (ERB's) order finding that the County and the Sheriff had committed an unfair labor practice under the Public Employees Collective Bargaining Act (PECBA), ORS 243.650 to ORS 243.782, by unilaterally changing work schedules during negotiations with the Marion County Law Enforcement Association (MCLEA), and ordering the County and the Sheriff to restore a four-day/twelve-hour (4-12) scheduling system.

The following facts are drawn from ERB's findings, with which no party takes issue.

The County and the Sheriff are public employers, and MCLEA is the exclusive representative of a bargaining unit of employees within the Sheriff's office. In 1977, the Oregon Public Employees Union (OPEU)[1] was certified as the exclusive representative of certain employees of the Sheriff.[2] OPEU entered into a series of collective bargaining agreements with the County and the Sheriff. The agreement in effect from July, 1, 1989, through June 30, 1991, provided in part:

> "This Agreement is entered into by the Board of County Commissioners for Marion County, Oregon, hereinafter referred to as the 'Board,' the Marion County Sheriff, hereinafter referred to as the 'Sheriff,' and the Oregon Public Employees Union, hereinafter referred to as the 'Union.' * * *
>
> "* * * * *
>
> "The employer recognizes the Union as the exclusive bargaining agent for all employees of the Marion County Sheriff's Department Bargaining Unit * * *.
>
> "* * * * *

---

[1] OPEU was then known as the Oregon State Employees Association (OSEA). The name change occurred before August, 1981.

[2] ERB certified OPEU as the exclusive representative of

"[a]ll employees of the Marion County Sheriff's Department, excluding those employed in the rank of sergeant and above, confidential employees, temporary and part-time employees and members of the Sheriff's Reserve."

*"Section 2. Workweek.* The regular workweek shall consist of four (4) consecutive days of twelve (12) hours each, followed by four (4) days of off-duty time for deputies assigned to the uniform section of the Field Services Division. * * * The Sheriff reserves the option of establishing an eight (8) hour, five (5) day workweek, * * * or a twelve (12) hour, four (4) day workweek, as the Sheriff may determine necessary to best meet the operating needs of the department or activity.

"* * * * *

*"Section 4.* Employees working twelve (12) hour work shifts established under Section 2 and 3 of this Article, shall receive an additional twelve (12) hours off per month, with pay, to be taken during the calendar month [known as a 'flex day']. * * *

"* * * * *

*"ARTICLE 46 — LIFE OF AGREEMENT AND TERMINATION*

"The period of this Agreement is from July 1, 1989, through June 30, 1991. If either party wishes to renew or modify this Agreement as of its conclusion, such renewal or modification must be submitted in writing to the other party by December 1, 1990. Negotiations shall begin by January 5, 1991. The Agreement shall remain in full force and effect during the period of such negotiations except that if a new Agreement is not concluded by June 30, 1991, this Agreement may be terminated by giving the other party at least thirty (30) days written notice of such intent to terminate this Agreement."

In the latter part of 1990, the Sheriff planned to switch to a five-day/eight-hour (5-8) schedule. Deputy Sheriff William Jordan talked to the Sheriff about retaining the 4-12 system. The Sheriff stated that the 5-8 schedule was being considered in order to eliminate the twelve-hour flex day provided in the 4-12 system. In January of 1991, after several weeks of discussion about the proposed schedule change, Jordan presented the Sheriff with a proposed "Letter of Agreement," which provides:

"The Marion County Deputy Sheriff's Association and the Marion County Sheriff agree that the additional twelve hours off per month referred to as the flex day, shall no longer be an entitlement, due to the change in the scheduled work period, from 28 days to 24 days. This change, under the

Department of Labor Fair Labor Standards Act, allows for the continuance of a four (4) day on/four day off schedule, utilizing the twelve (12) hour shift pattern, when that schedule is utilized.

"All other provisions of the Collective Bargaining Agreement remain unchanged by this agreement."

The agreement was signed by the Sheriff and by Charles DeSerrano, who acted with OPEU's knowledge and on its behalf, although—for reasons that do not appear in the record—DeSerrano is identified at the signature line as "President, Marion County Deputy Sheriff's Association."[3]

Three months later, MCLEA filed a petition with ERB seeking certification as the exclusive representative of the bargaining unit represented by OPEU. In June, 1991, OPEU disclaimed its representational interest, and the County and the Sheriff voluntarily agreed to recognize MCLEA as the exclusive bargaining unit of the Sheriff department employees, beginning on July 1, 1991.

By its terms, the collective bargaining agreement expired on July 1, 1991. Beginning on July 11, 1991, the County, the Sheriff and MCLEA held bargaining sessions about a new agreement. One of the "hot topics" was hours of work. MCLEA wanted to continue the 4-12 schedule and to have the flex day returned. The Sheriff expressed concern that the 4-12 schedule left too few officers on the road at any given time. On August 28, 1991, while negotiations continued, the Sheriff unilaterally issued a memorandum changing the work schedule from 4-12 to 5-8, beginning on October 1, 1991.

MCLEA filed an unfair labor practice complaint, alleging, among other things, that the County and the Sheriff had engaged in an unfair labor practice under ORS 243.672-(1)(e) by unilaterally changing the work schedule during contract negotiations.

Sometime after the closing of the record, the parties participated in mediation and interest arbitration. However,

---

[3] There is testimony in the record, which is not contradicted, that the terms "Marion County Deputy Sheriff's Association" and "OPEU" had been used interchangeably by the parties for some years.

they apparently failed to inform ERB of that fact. ERB found that the schedule change was an unfair labor practice and ordered the County and the Sheriff to reinstate the 4-12 schedule. According to ERB, by unilaterally changing the hours of work during a period of negotiation, the County and the Sheriff had refused to bargain in good faith, in violation of ORS 243.672(1)(e). In determining whether a unilateral "change" had occurred, ERB considered the expired collective agreement as the primary reference for the "status quo." ERB reasoned that, although the original collective bargaining agreement permitted the County and the Sheriff to change hours of work, the Letter of Agreement of January, 1991, modified that provision to ensure continuation of the 4-12 schedule.

Following ERB's decision, an arbitrator issued an interest arbitration award, which provided, in part, that the "Regular Work Week" would be the 5-8 schedule, with the Sheriff reserving the option of establishing other listed schedules as well.

On the basis of the arbitrator's award, the County and the Sheriff requested reconsideration. On reconsideration, ERB adhered to its order. On review, the County and the Sheriff assign error to ERB's conclusion that they committed an unfair labor practice and to ERB's order to return to the 4-12 schedule, contrary to the arbitrator's award.

Regarding the first assignment, the County and the Sheriff concede that a unilateral change in the status quo regarding a mandatory subject of bargaining, such as hours of work, during the period of negotiations constitutes an unfair labor practice. *See Wasco County v. AFSCME*, 46 Or App 859, 613 P2d 1067 (1980). According to the County and the Sheriff, there simply has been no change in the status quo regarding hours of work, because the collective bargaining agreement, which expressly allowed the Sheriff to change schedules as "necessary to best meet the operating needs of the department," never expired. Alternatively, they argue that, even if the agreement had expired, it remains the primary reference point for determining whether there has been a unilateral change in the status quo, and its terms plainly establish that the status quo included the Sheriff's right to change schedules. MCLEA argues that, because it

was not a signatory to the collective bargaining agreement, it is not bound by its terms. It does not respond to the County's and the Sheriff's argument that the terms of the contract nevertheless define the extent to which there has been a change in the status quo.

We need not determine whether the collective bargaining agreement expired, or whether MCLEA was a party to it. In either case, the agreement is the reference point for determining whether the County and the Sheriff changed existing terms and conditions of employment. *Multnomah County Corrections Officers Association v. Multnomah County Sheriff's Office and Multnomah County*, 9 PECBR 9529, 9558 (1987); *In the Matter of Petition for Declaratory Ruling filed Jointly by Coos Bay Education Association and Coos Bay School District No. 9*, 9 PECBR 9039, 9047 (1986). Accordingly, we turn to the question of whether ERB correctly construed the collective bargaining agreement to require continuation of the 4-12 work schedule.

A collective bargaining agreement is a contract, subject to the general rules of contract construction. *OSEA v. Rainier School Dist. No. 13*, 311 Or 188, 194, 808 P2d 83 (1991). Under those general rules of construction, ERB must determine whether the provision at issue is ambiguous. If it is, then ERB must ascertain from the evidence what the parties intended by that ambiguous provision. 311 Or at 194. We review the first conclusion as a matter of law and the second as a matter of fact, which we will affirm if supported by any competent evidence. *Thompson v. Bolliger, Hampton & Tarlow*, 118 Or App 700, 708-09, 849 P2d 526, *rev den* 317 Or 163 (1993).

In this case, it is uncontested that the collective bargaining agreement provided the Sheriff the discretion to change the work schedule "as the Sheriff may determine necessary." No one suggests that that provision is ambiguous. The Letter of Agreement of January, 1991, provided for a change in the scheduled work period, from 28 to 24 work days. It then provided for the elimination of the "flex day," to which employees working the 4-12 schedule had previously been entitled. That change "allows for the continuance of a four (4) day on/four day off schedule * * * when that schedule is utilized." The latter agreement then provides that all other

provisions of the collective bargaining agreement, including the provision allowing the Sheriff to change the work schedule, "remain in effect."

■ ■ We find no ambiguity in those provisions. They contain no language *requiring* the Sheriff to continue the 4-12 schedule. They merely provide that, "when that schedule is utilized," the employees will no longer be entitled to the flex day. ERB, therefore, erred in resorting to extrinsic evidence of the parties' intentions and in concluding on the basis of that evidence that the parties intended the Letter of Agreement to mean something other than what it plainly says. The agreement, which is the basis for determining the status quo, provided that the Sheriff could change the work schedule. Accordingly, when the Sheriff did that, there was no change in the status quo and, hence, no unfair labor practice.

Because we conclude that ERB erred in concluding that the County and the Sheriff engaged in an unfair labor practice, we need not reach their second assignment of error.

Reversed and remanded for reconsideration.