Argued and submitted November 27, 2002, affirmed March 20, 2003

LINCOLN COUNTY EDUCATION ASSOCIATION,
*Respondent,*

*v.*

LINCOLN COUNTY SCHOOL DISTRICT,
*Petitioner.*

UP-53-00; A117542

67 P3d 951

Bruce Zagar argued the cause for petitioner. With him on the briefs was Paul A. Goodwin.

Barbara J. Diamond argued the cause for respondent. With her on the brief were Paul B. Gamson and Smith, Gamson, Diamond & Olney.

Before Edmonds, Presiding Judge, and Kistler and Schuman, Judges.

SCHUMAN, J.

**SCHUMAN, J.**

The Lincoln County Education Association (association), a school employees' union, filed a complaint with the Employment Relations Board (ERB), accusing the Lincoln County School District (district) of committing an unfair labor practice when, during the period after one collective bargaining agreement had expired but before another had begun, the district unilaterally increased the number of student contact hours required of teachers in three middle schools. The association contended that the increase was a *per se* refusal to bargain because it unilaterally changed the status quo with respect to a mandatory subject of bargaining: number of contact hours. The district responded that the status quo permitted it to increase contact time, so its unilateral action did not change the status quo and therefore was not a refusal to bargain. A hearing officer and ERB agreed with the association. ERB ordered the district to "cease and desist from unilaterally changing the student contact time status quo" and to bargain with the association "concerning the appropriate make-whole relief * * *." The district appeals, and we affirm.

The parties agree on all of the relevant historical facts. Between July 1, 1995 and June 30, 2000, labor relations between the district and its represented employees were governed by a collective bargaining agreement that provided, in part:

"[T]he [School] Board has and will continue to retain the rights and responsibilities to operate and manage the school system and its programs, facilities, properties, and activities of its employees.

"[I]t is expressly recognized that the Board's operational and managerial responsibilities include * * * the allocation and assignment of work to employees * * * [and] the right to * * * establish work hours of employment, to schedule classes and assign work loads.

"* * * * *

"A teacher's total in-school workday shall consist of seven and one-half (7-1/2) hours, exclusive of the duty-free lunch period * * *. The teacher's in-school workdays include

responsibilities for a variety of noninstructional/classroom responsibilities e.g., supervision of bus loading and unloading, playground supervision, hall duty, inventorying books and materials, etc.

"A classroom teacher will have daily preparation time, in addition to his/her duty-free lunch, during which he/she shall not be assigned to any other duties. Full-time (1.0 FTE) teachers will have a continuous preparation period within the workday of one class period of not less than forty (40) minutes."

As ERB found and the parties agree, this agreement recognized that a teacher's 7.5 hour in-school workday includes both student contact time and noncontact time. The agreement did not specify any maximum amount of student contact time, and, more importantly for this case, it did not specify whether preparation time counted as student contact time. During the negotiations leading up to the agreement, the association had proposed that preparation time automatically and universally be counted as student contact time, but the district objected and the association withdrew the proposal.

When the 1995-2000 collective bargaining agreement expired, the in-school workday began at 7:50 a.m. and the student contact workday began at 8:35 a.m. Most teachers had their preparation time during the student contact workday, that is, some time after 8:35 but not during lunch. After the 1995-2000 contract expired, the district, without consulting or bargaining with the association, announced that henceforth all teachers' preparation time would occur before the start of the student contact workday. As a necessary result of that decision, the average amount of teachers' student contact time increased. During the last year covered by the 1995-2000 collective bargaining agreement, student contact time at the three middle schools involved in this litigation (Newport, Taft, and Toledo) ranged from 276 to 300 minutes per day. Under the revised schedule, the range was from 327 to 335 minutes per day. The average amount of student contact time increased 14 percent, from 290 minutes per day to 330.[1]

---

[1] The dispute in this case involves only the period between the expired collective bargaining agreement and its replacement; the district concedes that it "has an obligation to bargain the issue for the successor contract."

■■  The parties agree not only on the historical facts in this case but also on most of the relevant legal principles. A public employer such as the district commits an unfair labor practice if it refuses to bargain collectively in good faith with an authorized representative such as the association. ORS 243.672(1)(e). An employer is considered automatically to have refused to bargain in good faith if the employer institutes a unilateral change to the status quo involving a mandatory subject of bargaining before bargaining for that change has ended. *Marion Cty. Law Enforcement Assn. v. Marion Cty.*, 130 Or App 569, 574, 883 P2d 222 (1994), *rev den*, 320 Or 567 (1995); *Wasco County v. AFSCME*, 46 Or App 859, 861, 613 P2d 1067 (1980). The amount of student contact time is a mandatory subject of bargaining between school districts and teachers. *Gresham Tchrs. v. Gresham Gr. Sch.*, 52 Or App 881, 889, 630 P2d 1304 (1981). To determine whether a change to the status quo has occurred, ERB compares the new provision to either the existing collective bargaining agreement or, if that agreement does not address the disputed issue with sufficient clarity, to past practice. If the asserted change takes place after a collective bargaining agreement has expired but before a successor agreement is in place, then, because an employer has an obligation to preserve the status quo in the interim period, *see* ORS 243.712(2)(d), the terms of the expired agreement or the practice in place during its existence remains the status quo benchmark.

■  The association argues that, under those facts and legal principles, the district clearly engaged in an unfair labor practice. The 1995-2000 collective bargaining agreement did not contain any provision dealing with the amount of student contact time. Therefore, the status quo after that agreement expired must be determined by examining the district's practice during the expired contract period. That practice required teachers at the three middle schools to work an average of 290 minutes of student contact time per day. The district unilaterally changed that requirement by increasing student contact time by 14 percent. According to the association, that unilateral change to a mandatory subject of bargaining amounted to a *per se* unfair labor practice under ORS 243.672(1)(e).

In response, the district raises two arguments. The first involves the so-called "bargaining to completion" rule. According to the district, although the 1995-2000 collective bargaining agreement did not contain any specific provision setting out maximum or minimum student contact time, it nonetheless represented an agreed-upon bargain (a "bargain to completion") between the district and the association on that issue. The completed bargain constituted, by definition, the status quo during the life of the agreement and the interim thereafter. Under that completed bargain, the district, by virtue of its prerogatives to control "the allocation and assignment of work to employees," to "establish work hours of employment," and "to schedule classes and assign work loads," retained the discretion to change the teachers' student contact time if doing so did not violate some other term of the collective bargaining agreement such as the 7.5 hour in-school workday or the mandatory 40 minutes of preparation time. In requiring all teachers to take preparation time outside of student contact time, the district did not increase the in-school workday or decrease preparation time. Therefore, the district's added contact time did not change the status quo. That being the case, the district had no obligation to bargain the addition; failing to do so did not amount to an unfair labor practice.

The foundational premise of the district's argument is that, even though the collective bargaining agreement does not address contact time, it nonetheless contains "sufficient language specifically relevant to [contact time] to allow * * * ERB to conclude that bargaining on that subject has been completed." The precise contours of that argument are important. It is not an argument about interpreting the agreement, which, the parties and ERB agree, does not include any terms dealing with contact hours. The district, in other words, does not argue that the collective bargaining agreement, correctly construed, encompasses a completed bargain over contact hours. That argument would raise a purely legal question regarding ERB's interpretation of the agreement, which we would review for legal error. *OSEA v. Rainier School Dist. No. 13*, 311 Or 188, 194-95, 808 P2d 83 (1991); *Harrisburg Ed. Assn. v. Harrisburg Sch. Dist. #7*, 186 Or App 335, 342, 63 P3d 1176 (2003). Rather, the district's contention is that

the collective bargaining agreement, because it deals with topics that are "relevant to" contact time (length of in-school workday, amount of preparation time, etc.), is itself evidence that the parties reached a separate, unwritten agreement on contact time.

The district also emphasizes that, while bargaining the 1995-2000 collective bargaining agreement, the association proposed a term that would have required preparation time to be counted as contact time but withdrew that proposal when the district opposed it. According to the district, that fact also supports a finding that the parties completed a bargain on the issue of contact hours.

We agree that a reasonable person, reading the 1995-2000 collective bargaining agreement and knowing that the association had made and then withdrawn a proposal regarding contact time, could find that, when the district unilaterally increased contact time in 2001, it did so pursuant to an already-bargained agreement that it could increase contact time if doing so did not violate some other term of the contract. However, a reasonable person could also easily reach the contrary conclusion: Because the actual contract that the parties bargained did not expressly mention contact time, and because the topic was raised and then voluntarily withdrawn, the parties did not bargain that issue. That is ERB's finding, and substantial evidence supports it. ORS 183.482(8)(c).

The district argues on appeal that, when ERB heard this case, its established practice was to use the so-called "specifically relevant language" test described above, that is, to focus on whether a collective bargaining agreement had "sufficient language specifically relevant" to the disputed issue to allow ERB to conclude that the issue had been bargained to completion. The district does not argue, however, that ERB deviated from that practice without an adequate explanation, as required by ORS 183.482(8)(b)(B). In any event, the Legislative Assembly has delegated broad discretion to ERB in interpreting and deciding how to implement ORS 243.672(1)(e), and ERB can do so without prior rulemaking. *Olney School Dist. 11 v. Olney Education Assn.*, 145 Or App 578, 582, 931 P2d 804 (1997); *Coleman v. CSD,* 71 Or

App 687, 691, 694 P2d 555, *rev den*, 299 Or 251 (1985). ERB did not act outside of that discretion in concluding that, at the time the district increased contact hours, it had not already struck a bargain with the association under which it was permitted to do so.

■    We therefore turn to the district's alternative argument: Even if the collective bargaining agreement did not imply a bargain under which the district could increase contact hours, the district's past practice implied such an agreement. Therefore, when the district increased contact hours before the 2001 school year, it did not unilaterally change the status quo; hence, it did not commit an unfair labor practice.

As noted above, the undisputed facts demonstrate that, during the last year covered by the 1995-2000 collective bargaining agreement, student contact time at the schools involved in this litigation ranged from 276 to 300 minutes per day. Under the revised schedule, the range was from 296 to 335 minutes per day. The average amount of contact increased 14 percent, from 290 minutes per day to 330. During the life of the 1995-2000 collective bargaining agreement, the district had never increased the amount of contact time at any of the schools by more than three percent, or nine minutes. ERB found:

> "The magnitude of the District's 2000-2001 increase in the number of student contact time minutes was more than *double* the maximum change of minutes that had occurred in the respective schools in the preceding three years. Given our finding that the District schedules classes that range from approximately 40 to 50 minutes per class period, the District's 2000-2001 increase in student contact time added *over 50 percent of a class period* to each teacher's daily student contact responsibilities."

(Emphasis in original.) From undisputed facts, ERB reasoned to the conclusion that "the District's * * * change, in 2000-2001, changed the status quo and, therefore, violated ORS 243.672(1)(e)." That conclusion is supported by substantial reason.

In sum, when the district announced that all preparation time would occur before the student contact day begins, the parties did not have, by agreement or by prior

practice, an understanding that such a change was within the district's authority. The district therefore significantly changed the status quo with respect to a mandatory subject of bargaining. That change was an unfair labor practice. ORS 243.672(1)(e).[2]

Affirmed.

---

[2] The district does not assign error to ERB's order requiring the parties to bargain over appropriate make-whole relief.