Submitted on remand from the Oregon Supreme Court March 25, 2013, affirmed December 3, 2014

## ASSOCIATION OF OREGON CORRECTIONS EMPLOYEES,
*Respondent,*

*v.*

## STATE OF OREGON
and Department of Corrections,
*Petitioners.*

Employment Relations Board
UP3303; A143552

343 P3d 637

John R. Kroger, Attorney General, Jerome Lidz, Solicitor General, David B. Thompson, Interim Solicitor General, and Leigh A. Salmon, Assistant Attorney General, for petitioners.

Becky Gallagher and Garrettson, Gallagher, Fenrich & Makler, P.C., for respondent.

Before Duncan, Presiding Judge, and Nakamoto, Judge, and Wollheim, Senior Judge.

WOLLHEIM, S. J.

## WOLLHEIM, S. J.

In our most recent opinion in this case, *Assn. of Oregon Corrections Emp. v. State of Oregon*, 246 Or App 477, 268 P3d 627 (2011), *rev'd and rem'd*, 353 Or 170, 295 P3d 38 (2013),[1] we held that the Employment Relations Board (ERB) erred in concluding that the Department of Corrections (DOC) committed an unfair labor practice under ORS 243.672(1)(e) in making mid-term, unilateral changes to Oregon State Penitentiary employees' scheduled days off and shift stop and start times without first bargaining with representatives of the employees' union, the Association of Oregon Corrections Employees (AOCE). We reasoned that the parties' collective bargaining agreement (CBA) unambiguously gave DOC the right to make the contested changes unilaterally. 246 Or App at 485. Because we reversed ERB on that ground, we did not reach DOC's additional argument, that ERB erred in rejecting DOC's affirmative defense that AOCE waived its right to bargain mid-term about the changes by inaction, because it did not make a demand to bargain within 14 days of notice of the changes, as required by ORS 243.698(3).

In *Assn. of Oregon Corrections Emp. v. State of Oregon*, 353 Or 170, 295 P3d 38 (2013), the Supreme Court reversed this court's decision and held that, under ORS 243.650(7) and the parties' CBA, mid-term changes to employees' scheduled days off and their shift start and stop times were mandatory subjects of bargaining. The Supreme Court has now remanded the case to us for consideration of the issue that we did not reach in our previous decision in this case: Whether ERB erred in rejecting DOC's affirmative defense that AOCE waived its right to bargain by not timely demanding to bargain. We affirm ERB's conclusion that DOC did not establish its defense of waiver, and we therefore affirm ERB's order.

ORS 243.698 provides, in part:

"(1) When the employer is obligated to bargain over employment relations during the term of a collective

---

[1] *See also Association of Oregon Corrections Employees v. DOC*, 209 Or App 761, 149 P3d 319 (2006).

bargaining agreement and the exclusive representative demands to bargain, the bargaining may not, without the consent of both parties and provided the parties have negotiated in good faith, continue past 90 calendar days after the date the notification specified in subsection (2) of this section is received.

"(2)   The employer shall notify the exclusive representative in writing of anticipated changes that impose a duty to bargain.

"(3)   Within 14 calendar days after the employer's notification of anticipated changes specified in subsection (2) of this section is sent, the exclusive representative may file a demand to bargain. If a demand to bargain is not filed within 14 days of the notice, the exclusive representative waives its right to bargain over the change or the impact of the change identified in the notice."

Under the statute, when, during the term of a collective bargaining agreement, an employer notifies an exclusive representative in writing of anticipated changes that impose a duty to bargain, the exclusive representative has 14 days to "file a demand to bargain." If no demand is filed within 14 days, the exclusive representative waives its right to bargain over the changes. However, the statute does not impose an obligation to demand to bargain if no written notification of an anticipated change is given.

In this case, DOC asserted as an affirmative defense that AOCE waived its right to bargain because, among other reasons, it did not make a written demand to bargain within 14 days of receiving written notice of the changes from DOC. DOC asserted that AOCE received written notice of DOC's intended changes to the bid schedule no later than April 29, 2003, when an AOCE representative met with DOC management to discuss AOCE's concerns with a draft bid schedule. It is undisputed that AOCE made no written demand to bargain; however, on May 27, 2003, an AOCE representative made an oral request to bargain. Before ERB, DOC contended that having received written notice of the changes no later than April 29, 2003, AOCE was required to file its demand to bargain no later than 14 days from that date, and that AOCE's oral request on May 27 was, therefore, untimely. And if the demand was timely,

DOC contended, an oral request to bargain did not satisfy the statute's requirement to "file" a demand.

ERB implicitly rejected DOC's contention that it notified AOCE of anticipated changes by April 29, finding instead that AOCE became aware of DOC's intention to post a new schedule "[s]hortly before May 27, 2003." ERB further found that, on May 27, 2003, AOCE made an oral request to bargain and that, when, on May 30, 2003, the parties could not reach a consensus, DOC posted the new schedule as a *fait accompli*.

ERB rejected DOC's affirmative defense that AOCE had waived the right to bargain, explaining that (1) ORS 243.698 did not require AOCE to make a *written* demand to bargain and AOCE's oral request on May 27 was sufficient; (2) in any event, DOC's unilateral implementation of the changes in the schedule on May 30 constituted a *fait accompli*. The changes having already been made, ERB explained, AOCE was excused from making a demand to bargain.

In its brief on judicial review of ERB's order, DOC asserts that it was relieved of its obligation to bargain over the proposed schedule changes because AOCE failed to demand to bargain in writing. DOC continues to contend that, assuming, as ERB concluded, that the demand did not have to be in writing, the record shows that AOCE's oral demand on May 27, 2003, was untimely. Next, DOC rejects ERB's rationale that the requirement to make a demand is excused by the fact that DOC presented the changes in the schedule as a *fait accompli* over which it did not intend to bargain. DOC contends that ERB cannot create an exception to the requirement for a demand to bargain for a *fait accompli*. Finally, DOC contends, even assuming that ORS 243.698 allows a *fait accompli* exception, here the record shows that the change was not in fact implemented when it was posted on May 30, 2003, but would not be finalized until approximately 60 days after its posting. For all of those reasons, DOC contends, ERB erred in determining that DOC had not met its burden to show that AOCE had waived the right to bargain over the changes.

Because it is dispositive, we address first AOCE's counter-assertion that ERB's rejection of DOC's affirmative

defense was correct because DOC did not establish that it gave AOCE written notice of anticipated changes to the bid schedule so as to trigger an obligation to demand to bargain under ORS 243.698(3). AOCE reasons that, because DOC did not believe that the schedule changes imposed a duty to bargain, DOC never had reason to provide the required notice and never, in fact, provided written notice to AOCE of anticipated schedule changes, as required by ORS 243.698(2). Indeed, there is no evidence in the record of an explicit written notification by DOC to AOCE and no finding by ERB that DOC gave such notification to AOCE.

DOC responds, however, that, although it did not consider the schedule changes to be mandatory subjects of bargaining, the record reflects that DOC did, in fact, provide written notice of the changes to AOCE. DOC notes ERB's finding that shortly before May 27, 2003, AOCE became aware that DOC intended to post a new schedule at OSP. DOC further notes that the record reflects that, at a meeting with DOC management on April 29, 2003, AOCE representatives had in their possession a written copy of a draft proposed bid schedule. That evidence, DOC asserts, supports a finding that, no later than April 29, 2003, AOCE had been notified in writing of the proposed schedule changes, as required by ORS 243.698(2).

AOCE replies that, although there is evidence that, during the month before the schedule changes were posted, various drafts of schedule changes were circulating, there is no evidence that DOC gave written notice to AOCE of the specific changes that DOC contemplated, as required by ORS 243.698(2), and upon which AOCE could make a decision whether to demand to bargain under ORS 243.698(3). AOCE contends, further, that ERB's conclusion that DOC presented the changes as a *fait accompli* is consistent only with the finding that DOC did not provide the required written notice.

We agree with AOCE's contention. Waiver of the right to bargain is an affirmative defense for which DOC bears the burden of proof. *See Lane County Public Works Assn. v. Lane County*, 118 Or App 46, 52, 846 P2d 414 (1993) (employer in unfair labor practice case has burden of

proving affirmative defense). That burden required a showing that DOC provided the union written notice of an anticipated change to the employment relations during the term of the CBA that would have triggered the union's obligation to demand bargaining. Although evidence that AOCE had *drafts* of proposed bid schedule changes in its possession at the time of the April 29 meeting supports an inference that DOC gave the required notice, that is not the inference that was drawn by the ERB. Rather, ERB implicitly rejected that inference, finding instead that AOCE became aware of DOC's intention to post a new schedule "[s]hortly before May 27, 2003." Further, ERB's finding that DOC had presented its changes as a *fait accompli* over which it would not bargain, also supported by substantial evidence, means that ERB implicitly found that any written notice by DOC was not for *anticipated* changes.[2] Thus, if ERB had addressed explicitly whether DOC had given the required notice, it would have relied on that same finding that no advance written notice of anticipated changes had been given. That finding, which is supported by substantial evidence in the record, requires the same conclusion reached by ERB— that DOC did not establish that AOCE had waived its right to bargain; thus the failure to make the finding explicitly does not provide a basis for reversal. *See 3P Delivery, Inc. v. Employment Dept.*, 254 Or App 192, 196, 295 P3d 83 (2012); *Steele v. Water Resources Commission*, 248 Or App 229, 240, 273 P3d 243 (2012).

In light of ERB's implicit finding that DOC did not give AOCE written notice of proposed changes that would trigger a requirement by AOCE to demand to bargain, ERB correctly determined that AOCE did not waive the right to bargain. We therefore do not reach DOC's additional contentions that ERB erred in concluding that a demand to bargain could be made orally, or in applying a *fait accompli* exception to the requirement that AOCE make a demand to bargain.

Affirmed.

---

[2] Because Oregon's Public Employees Collective Bargaining Act (PECBA) was modeled after the National Labor Relations Act (NLRA), 29 USC §§ 151-169, federal case law provides guidance in interpretation of PECBA, including the waiver defense. *Assn. of Oregon Correctional Emp.*, 353 Or at 174.