Argued and submitted October 13, 2017; on petition, reversed and remanded; affirmed on cross-petition February 26, 2020

PORTLAND FIRE FIGHTERS' ASSOCIATION,
IAFF LOCAL 43,
*Petitioner*
*Cross-Respondent,*

*v.*

CITY OF PORTLAND,
*Respondent*
*Cross-Petitioner.*

Employment Relations Board
UP05913; A160990

461 P3d 1001

The Portland Fire Fighters' Association, IAFF Local 43 (the union), which represents employees of the City of Portland's Fire & Rescue Bureau, initiated a proceeding with the Employment Relations Board (ERB), asserting that the city committed unfair labor practices under ORS 243.672(1)(e) by making unilateral changes to operations and to the process for selecting candidates for promotion in the bureau. ERB rejected the union's claim relating to operational changes but agreed that the city had committed an unfair labor practice by unilaterally changing the process for selecting candidates for promotion. The union petitions for judicial review of ERB's rejection of the claim relating to operational changes, and the city cross-petitions, challenging ERB's determination that it had committed an unfair labor practice by changing the process for selecting candidates for promotion. *Held*: On the union's petition, the court held that ERB erred in holding that the parties had reached a binding agreement as to operational changes that were subject to mandatory bargaining or, in the alternative, that the union had waived its right to bargain by inaction. On the city's cross-petition, the court held that ERB's order that the bureau had unilaterally changed the process for promotion, a mandatory subject of bargaining, was supported by substantial evidence.

On petition, reversed and remanded; affirmed on cross-petition.

Barbara J. Diamond argued the cause for petitioner-cross-respondent. Also on the briefs was Diamond Law.

Denis M. Vannier argued the cause and filed the briefs for respondent-cross-petitioner.

Before Armstrong, Presiding Judge, and Tookey, Judge, and Shorr, Judge.

ARMSTRONG, P. J.

On petition, reversed and remanded; affirmed on cross-petition.

## ARMSTRONG, P. J.

This case involves two unfair labor practice claims under the Public Employees Collective Bargaining Act (PECBA) brought by the Portland Fire Fighters' Association, Local 43 IAFF (the union), which represents employees of the City Portland's Fire & Rescue Bureau (the bureau). The union contended that the city committed unfair labor practices under ORS 243.672(1)(e)[1] by making unilateral changes to operations and to the process for selecting candidates for promotion. The Employment Relations Board (ERB) rejected the union's claim relating to operational changes but agreed that the city had committed an unfair labor practice by unilaterally changing the process for selecting candidates for promotion in the bureau. The union petitions for review, challenging ERB's rejection of the claim relating to operational changes, and the city cross-petitions, challenging ERB's determination that it committed an unfair labor practice by making changes to the process for selecting candidates for promotion. We review ERB's order under ORS 183.482(8)(a) for substantial evidence and legal error. We agree with the union on its petition but reject the city's contention on cross-petition. We therefore reverse and remand ERB's order for further proceedings on the petition and affirm ERB's order on the cross-petition.

We first address the union's petition. We draw our summary of the undisputed facts from ERB's findings. The bureau provides fire and emergency services to Portland and the metropolitan area.[2] The union is the exclusive bargaining agent for all bureau bargaining unit members. The city and the union were parties to a collective-bargaining agreement covering the period of July 1, 2012 to June 30, 2016.

In late 2012, the city began its budget process for the 2013-14 fiscal year anticipating a shortfall. The city

---

[1] ORS 243.672(1)(e) provides that it is an unfair labor practice for an employer to "[r]efuse to bargain collectively in good faith with the exclusive representative."

[2] The bureau is an organization in which personnel are assigned to a rank. Employees join the bureau at the rank of fire fighter and may be promoted to lieutenant, captain, battalion chief, deputy chief, division chief and fire chief. The ranks of fire fighter, lieutenant, captain, and battalion chief are members of the union's bargaining unit.

asked the bureau to develop its budget using a modified zero-based budget approach, requesting up to 90 percent of current appropriation levels with prioritized add-back packages for cut items. The bureau developed its proposed budget through a budgetary advisory committee. The union's president, Ferschweiler, served on that committee. The bureau submitted its proposed budget to the city's budget office.

On May 15, 2013, after considering the proposed budgets of all bureaus and departments, the mayor submitted a proposed budget to the city council reflecting a projected budget reduction for the bureau of $4.4 million (4.7 percent).

Between May 9 and May 23, Ferschweiler met three times with Siegel, the mayor's budget liaison, to discuss and negotiate how the bureau would implement the budget cuts, including consideration of the availability of a federal grant that might fill budget gaps. Fire Chief Janssens attended one of those meetings. The parties presented conflicting testimony at the contested case hearing as to whether there ultimately was an agreement as a result of the meetings. ERB found that, in the third meeting, the mayor's liaison and Ferschweiler reached an oral agreement as to how the cuts would be implemented and that Ferschweiler agreed not to contest the changes through grievance. On June 20, 2013, the city council approved the budget, which included an emergency clause and became effective immediately.

During this period, the parties were subject to the collective-bargaining agreement in effect through June 2016. During the life of a collective-bargaining agreement, there is a continuing duty to bargain over mandatory subjects of bargaining, ORS 243.698(3), and it is an unfair labor practice for a public employer to "[r]efuse to bargain collectively in good faith" over changes in the *status quo* concerning a subject that is mandatory for bargaining. ORS 243.672 (1)(e); *Portland Fire Fighters' Assoc. v. City of Portland*, 245 Or App 255, 265, 263 P3d 1040 (2011). Also, ORS 243.698(2) provides that, during the life of a collective-bargaining agreement, the employer "shall notify the exclusive representative in writing of anticipated changes that impose a duty to bargain." The exclusive representative then has

14 days within which to file a demand to bargain. The statute provides that, if a demand to bargain is not filed within 14 days of the notice, the exclusive representative waives its right to bargain over the change or the effect of the change identified in the notice. ORS 243.698(3).

The city has conceded that at least some of the changes in the adopted budget were changes to the *status quo* relating to operations that were mandatory subjects of bargaining. The union brought this proceeding, contending that ORS 243.698 required the city to notify the union in writing of the anticipated changes, that the failure to send the notice constituted a failure or refusal to bargain over the changes, and that the city has continued to commit an unfair labor practice by implementing the operational changes without negotiating.[3] In its answer, the city admitted that it had implemented the operational changes but denied that it was required to bargain over the effects of those changes. As an affirmative defense, the city asserted that the union was estopped or had waived its right to challenge the changes by agreeing to them during the budget negotiations.[4]

ERB rejected the union's claim based on analyses that it adopted *sua sponte*. Although, in oral argument before ERB, the city had explicitly rejected the suggestion that the budget negotiations constituted collective bargaining, ERB concluded that, as a matter of law, "the back-and-forth of multiple negotiations with the Union's president and City" during the budget process, in which each party had yielded in its initial position, constituted collective bargaining that

---

[3] The union also asserted a claim relating to the change in promotional processes, which we address later in this opinion.

[4] The city alleged as its affirmative defense:

"On May 16, 2013, Alan Ferschweiler, in his capacity as president of the [union], met with Fire Chief Janssens and Noah Siegel, the Mayor's policy adviser, at a budget forum meeting. During the meeting Mr. Ferschweiler agreed to the operational changes[.] The City materially changed its position and pursued a *** grant in reliance on the [union] president's agreement. By agreeing to those operational changes, [the union] should be prevented from now claiming that the City unilaterally changed working conditions without bargaining. Alternatively, by agreeing to those operational changes, [the union] waived any right that it had to bargain over the impact of those changes."

resulted in an agreement as to implementation of the budget cuts.[5] ERB concluded that the city had thereby exhausted its duty to bargain. In the alternative, ERB concluded that, having had notice of the proposed changes, the union waived its right to dispute them by failing to demand to bargain over them within a reasonable time after the union had notice of the changes.[6]

On judicial review, the union contends for several reasons that the ERB erred. The union's primary contention is that ERB erred in concluding that budget discussions in which Ferschweiler participated with the mayor's office on behalf of the union constituted collective bargaining.[7] The union asserts that budget negotiations, in which unions often participate, are political, not contractual, negotiations, and that a union's agreement to a bargain as to the budget does not constitute or waive collective bargaining as to operational changes necessitated by a negotiated budget that relate to mandatory subjects of bargaining. To support that contention, the union cites ORS 243.650(4), which defines "collective bargaining" as "the performance of the mutual obligation of a public employer and the representative of its employees to meet at reasonable times and confer in good faith with respect to employment relations for the purpose of negotiations concerning mandatory subjects of bargaining." That definition, the union asserts, implies an intention by the parties to engage in collective bargaining. The union cites evidence that none of the parties to the budget discussions considered that they were engaged in collective bargaining. *See North Clackamas Education Association v.*

---

[5] ERB explained that "[t]hat course of conduct qualifies as collective bargaining, regardless of whether either party might attach a different label to those actions."

[6] We note that ERB's waiver analysis was derived from its cases and was distinct from the statutory waiver applicable to mid-contract changes under ORS 243.698(3).

[7] The city contends that the union did not preserve its contention that the budget discussions did not constitute collective bargaining. We agree with the union that that issue, having been developed for the first time in ERB's order, did not need to be preserved. We note that ERB's rules authorized the union to request reconsideration of the order, OAR 115-010-0100, but that the union was not required to request reconsideration. *See* ORS 184.400(1) ("A petition for *** reconsideration [of any agency order] need not be filed as a condition of judicial review unless specifically otherwise provided by statute or agency rule.").

*North Clackamas School Dist.*, 32 PECBA 629, 655 (2007) (contract formation requires that a party's acceptance be "positive, unconditional, unequivocal, and unambiguous"). At the hearing, the city's counsel explicitly denied that the budget negotiations constituted collective bargaining, explaining that collective bargaining on behalf of the city is conducted by the city's Bureau of Human Resources. The union further notes that the parties' contract controls the circumstances under which mid-contract-term bargaining can occur, *see Assn. of Oregon Corrections Emp. v. State of Oregon*, 353 Or 170, 183, 295 P3d 38 (2013) (terms of collective bargaining agreement control), and explicitly provides that mid-contract-term agreements are not binding on either party unless approved in writing by the president of the union and the director of the Bureau of Human Resources. Finally, the union contends that under ORS 243.698,[8] when, during a contract term, an employer intends to take an action that will affect a mandatory subject of bargaining, the employer must give the exclusive representative written notice of the anticipated changes. ORS 243.698(3). Here, the union contends, no notice having been given, the budget discussions could not have constituted collective bargaining over the proposed changes.

Although the city did not contend before ERB that the budget discussions constituted collective bargaining, it now agrees with ERB's conclusion that the parties engaged in collective bargaining. It asserts that the budget negotiations met the statutory definition of collective bargaining, because they constituted discussions in good faith concerning employment relations, and that the city "exhausted its duty to bargain over the changes." But the city devotes most

---

[8] ORS 243.698 provides, as relevant:

"(1) When the employer is obligated to bargain over employment relations during the term of a collective bargaining agreement * * *

"(2) The employer shall notify the exclusive representative in writing of anticipated changes that impose a duty to bargain.

"(3) Within 14 calendar days after the employer's notification of anticipated changes specified in subsection (2) of this section is sent, the exclusive representative may file a demand to bargain. If a demand to bargain is not filed within 14 days of the notice, the exclusive representative waives its right to bargain over the change or the impact of the change identified in the notice."

of its attention in support of ERB's conclusion that the union waived its right to dispute the changes resulting from the budget reduction by failing to demand to bargain over them.

We disagree with ERB's conclusion that the budget negotiations satisfied the statutory requirements for collective bargaining and resulted in an enforceable agreement. The statutory definition of "collective bargaining" encompasses a deliberate intention of the parties to "confer in good faith with respect to employment relations for the purpose of negotiations concerning mandatory subjects of bargaining." Here, the record is undisputed that the parties were engaged in budget discussions. They did not consider themselves to be engaged in collective bargaining over employment relations. The individuals who would ordinarily sit at the bargaining table to negotiate with respect to employment relations were not even present. Additionally, it is undisputed that the parties' collective-bargaining agreement, which controlled, *Portland Fire Fighters' Assoc.*, 245 Or App at 263, required that any side agreements to the collective-bargaining agreement were not binding unless reduced to writing and signed by the union's president and the head of the city's Bureau of Human Resources. There was no written and signed agreement as to the proposed changes. For all of those reasons, we conclude that ERB erred in concluding that the parties had reached a binding agreement as to the changes and that the city had thereby satisfied its duty to bargain before implementing the operational changes in the 2013 budget.

We next address ERB's alternative rationale that the union had waived its right to bargain the changes. The common-law concept of "waiver" requires an intentional relinquishment of a known right. *Assn. of Oregon Corrections Emp.*, 353 Or at 183. In the labor context, case law establishes that a party may waive its right to bargain through clear and unmistakable language in a contract, bargaining history, or the party's action or inaction. *Id.* at 177 (citing *Assn. of Oregon Corr. Employees*, 20 PECBR 890, 897).[9] When asserted, ERB will consider an employer's affirmative

---

[9] We note that ERB explicitly distinguished in its order the common-law concept of waiver from the statutory waiver described in ORS 243.698.

defense of waiver. *Id.* Because waiver of the right to bargain is an affirmative defense, it is the employer's obligation to plead and prove it. *See Assn. of Oregon Corrections Emp. v. State of Oregon*, 267 Or App 413, 417, 343 P3d 637 (2014); *Lane County Public Works Assn. v. Lane County*, 118 Or App 46, 52, 846 P2d 414 (1993).

Here, ERB concluded that the union had waived its right to contest the budget cuts that affected mandatory subjects of bargaining by its inaction, that is, by failing to demand to bargain the changes after the union had actual notice of the proposed changes, either during the budget process or after the budget was adopted. But the union argues persuasively, and the record shows, that the city did not put forth a defense of waiver by inaction. Rather, the city argued that the union had waived its right or was estopped to bargain the changes by having affirmatively agreed to them during the budget negotiations.[10] Those theories are very different from the waiver-by-inaction rationale on which ERB based its determination. ERB reasoned "that those other legal theories might also lead us to the same conclusion (dismissal of the claim)," but that its own analysis was "the most fitting." However, in light of the fact that the city never asserted the affirmative defense of waiver by inaction, it cannot be said to have established it. We conclude, therefore, that ERB erred in basing its determination on waiver by inaction.

In light of our conclusion that the budget negotiations did not constitute collective bargaining and that ERB erred in basing its determination of waiver on a theory that had not been raised by the city, the claim will be remanded for ERB's reconsideration.

---

[10] In its answer to the complaint, the city alleged that, "by agreeing to those operational changes, [the union] waived any right that it had to bargain over the impact of the changes." In its post-hearing memorandum to ERB, the city argued:

"The Union waived its right to bargain over mandatory impacts of the budget cuts when the [union] president agreed to accept the budget cuts and promised not to grieve in exchange for the City pursuing a federal grant, which prevented the layoffs of 26 firefighters. To establish waiver, the evidence must show a clear, unequivocal, and decisive act of a party showing such a purpose."

We turn to the city's cross-petition. A public employer is required to bargain in good faith with the exclusive representative of its employees concerning changes in conditions of employment that are mandatory subjects of bargaining. ORS 243.672(1)(e). Mandatory subjects of bargaining are those that affect employment relations. ORS 243.650(4). "Employment relations" "includes, but is not limited to, matters concerning direct or indirect monetary benefits, hours, vacations, sick leave, grievance procedures and other conditions of employment." ORS 243.650(7)(a). If a matter concerns one of the enumerated subjects or "other conditions of employment," it is a mandatory subject of bargaining.

Matters concerning "other conditions of employment" are other subjects "of like character" to those enumerated. *Springfield Education Assn. v. School Dist.*, 290 Or 217, 233, 621 P2d 547 (1980). In determining whether matters concerning "other conditions of employment" are mandatory subjects of bargaining, ERB is required to balance the effect of the subject on the employees' work conditions against the subject's effect on management rights. Subjects that have a greater effect on employees' work conditions are mandatory subjects of bargaining; those that have a greater effect on management rights are not employment relations subject to mandatory bargaining. *Id*. at 234; ORS 243.650 (7)(c) ("employment relations" does not include subjects that ERB determines "have a greater impact on management's prerogative than on employee wages, hours, or other terms and conditions of employment").[11] Ultimately, whether a subject falls within "employment relations" as defined in ORS 243.650(7)(a) is a legal question for the court to decide. *Springfield Education Assn.*, 290 Or at 233.

We draw our summary of the facts relevant to the city's cross-petition from ERB's findings, which we conclude are supported by substantial evidence. ERB found that, since 2008, a standardized process has existed for the promotion of bureau employees. Candidates must participate in

---

[11] Some subjects are explicitly excluded from employment relations, including the determination of minimum qualifications for a position, the criteria for evaluation or performance appraisal, and the assignment of work duties. ORS 243.650(7)(g).

an assessment and an oral panel interview, for which they receive scores. Candidates are then placed, or "ranked," on an eligibility list according to their scores. When a vacancy occurs, candidates from the ranked eligibility list are interviewed by the Fire Chief or her designee. The Fire Chief then passes or fails the candidate for promotion. As long as the person who is ranked highest on the eligibility list passes the Fire Chief's interview, the person would be promoted.

ERB found that, in a change from that practice, in 2013, the Fire Chief promoted to the position of Battalion Chief a person from an unranked list of candidates, and promoted to the position of Senior Inspector a person who ranked lower on a ranked eligibility list than another candidate, based on the Fire Chief's subjective determination that the promoted candidates were more qualified than higher-ranked candidates. ERB concluded that those promotional procedures effected unilateral changes to past practices. Additionally, citing its order in *Milwaukie Police Employees Association v. City of Milwaukie*, 22 PECBR 168, 178 (2007), *aff'd*, 229 Or App 96, 211 P3d 381 (2009), ERB concluded that "promotion" is a mandatory subject of bargaining. Thus, ERB concluded that the city committed an unfair labor practice when it made a unilateral change to its established practice of selecting candidates for promotion from eligibility lists in ranked order.

In its assignment of error on cross-petition, the city states that ERB "erroneously held that the decision whom to promote to a particular position is a mandatory subject of bargaining." We have a different understanding of ERB's holding. ERB did not say that the decision whom to promote to a particular position is subject to bargaining; ERB concluded that *process* for promotion is a mandatory subject of bargaining, and that the city had committed an unfair labor practice by unilaterally changing that process.

The city does not seriously contend that promotion processes are not a mandatory subject of bargaining; nor could it. Indeed, the city concedes that procedures governing promotions are mandatory subjects for bargaining. The city would be hard-pressed to argue that the processes by which an employee seeks promotion do not concern an employee's

monetary benefits or implicate conditions of employment. *See Springfield Education Assn.*, 290 Or at 239-40 (holding that, because "promotion and job security" are likely to be affected by teacher evaluation, clear definition of evaluation criteria is a fairness procedure subject to mandatory bargaining). In this case, ERB found that the city changed past procedures by promoting candidates who passed the interview with the Fire Chief but who were not ranked highest on a ranked eligibility list. ERB's finding is supported by substantial evidence. We therefore affirm ERB's determination that the city committed an unfair labor practice.

On petition, reversed and remanded; affirmed on cross-petition.