Argued and submitted November 16, 2011, reversed and remanded
January 16, 2013

THREE RIVERS EDUCATION
ASSOCIATION, SOBC/OEA/NEA,
*Petitioner,*

*v.*

THREE RIVERS SCHOOL DISTRICT
and Employment Relations Board,
*Respondents.*

Employment Relations Board
UP1608; A145227

294 P3d 547

Margaret S. Olney argued the cause for petitioner. With her on the briefs was McKanna Bishop Joffe & Arms, LLP.

Nancy J. Hungerford argued the cause for respondent Three Rivers School District. With her on the brief was The Hungerford Law Firm, LLP.

Respondent Employment Relations Board waived appearance.

Before Armstrong, Presiding Judge, and Duncan, Judge, and Walters, Judge pro tempore.

DUNCAN, J.

**DUNCAN, J.**

In this case involving a labor dispute, petitioner, Three Rivers Education Association (association), seeks judicial review of an order of the Employment Relations Board (ERB) that dismissed its complaint alleging an unfair labor practice under ORS 243.672(1) against the Three Rivers School District (the district). The association argues that the ERB majority erred in concluding that the district's increase of teachers' student-contact time and workload was not subject to predecision bargaining because it was an "impact" of the district's decision to change the school schedule. Alternatively, the association argues that the ERB majority opinion is not supported by substantial reason. We review for substantial evidence, substantial reason, and errors of law, ORS 183.482(8); *Portland Assn. Teachers v. Mult. Sch. Dist. No. 1*, 171 Or App 616, 626-27, 16 P3d 1189 (2000), and reverse and remand.

We summarize the relevant facts from ERB's findings, which are undisputed. On November 19, 2007, in response to concerns about declining enrollment and, consequently, decreasing funding, and an increase in the number of credits required by the state for graduation from high school, the Three Rivers School District Leadership Team (the team)[1] recommended to the school board that "the District adopt a common [teacher] preparation period at the high schools using a trimester schedule" in place of the traditional semester schedule.

> "The Team projected that the District could reduce between 8 to 13 high school teaching positions through the use of a common preparation period, with a savings of approximately $570,000 to $890,000. The Team explained that a common preparation schedule allowed a school to teach the same number of students with fewer staff because the teachers taught every period instead of one seventh of them being away from students on a prep period."

The school board accepted the team's recommendation and adopted a tentative schedule for implementing the change, which was to take effect at the start of the 2008-09 school year.

---

[1] The team was made up of the district superintendent, human resources director, fiscal services director, and director of curriculum and business services.

The district did not notify the association, which is the exclusive representative for the district's teachers, that it was considering changing the school schedule, nor did it make any effort to bargain with the association before it decided to change the schedule.[2] As explained in greater detail below, under the Public Employee Collective Bargaining Act (PECBA), ORS 243.650 to 243.782, a public employer must engage in bargaining with the exclusive representative of its employees over "employment relations." ORS 243.662. Subjects included in "employment relations" are known as mandatory subjects of bargaining; subjects that are not "employment relations" are known as permissive subjects. *Portland Fire Fighters' Assoc. v. City of Portland*, 245 Or App 255, 264, 263 P3d 1040 (2011). In this case, the district did not believe that it needed to bargain with the association before it decided to change the school schedule because, in the district's view, the schedule change was a permissive subject of bargaining.

On November 26, 2007, the district notified the association that the school board had

> "approved a change in the high school structure for the 2008-2009 school year. The change moves the structure of the high schools from a 7-period semester schedule to a 5-period trimester schedule. * * * it will require substantial changes in the existing school day, including moving to a common prep period."

(Omission in ERB order.) Those changes in the school day included an increase in teachers' student-contact time and created the possibility of an increase in the overall number of classes that each teacher taught.

After the association was notified of the school board's action, its representative, Bilodeau, wrote to the district, demanding bargaining "over all mandatory aspects of both the decision and impacts of the decision to restructure your high school program." She also expressed concern that the district had made a decision before it notified the association:

> "I note that under the Public Employees Collective Bargaining Act, [PECBA,] bargaining over mid-contract

---

[2] A collective bargaining agreement for 2007 to 2010 was in effect between the parties. The provisions of that agreement are not relevant to the parties' dispute.

changes that are mandatory in nature is intended to occur when changes are 'anticipated,' rather than after a decision has been made to implement the change. Although we share your interest in working collaboratively, we also question whether legitimate bargaining can occur now that the board has already made its decision."

(Brackets in ERB order.)

The district's response indicated that it was prepared to negotiate, but it did not believe that any predecision negotiation was required under the circumstances. It stated:

"The decision to change a student schedule is a permissive subject and therefore the Board had no obligation to bargain prior to making that decision. Now that the decision has been made and the Association has been notified of that decision, we have received your request for bargaining. The District will bargain over any mandatory aspects of the impact of the decision on members of your bargaining unit."

The parties met on several occasions to bargain, and it is undisputed that they bargained to completion. The district implemented the trimester system and the new class schedule. Under the new schedule, teachers have "28 more minutes of student contact time per day than in the 2007-2008 school year" and "are responsible for three more classes per year than they were under the semester schedule."

In April 2008, the association filed an unfair labor practice complaint, alleging that the district had violated ORS 243.672(1) by failing to bargain before making the decision to increase student-contact time and workload, ORS 243.672(1)(e), and failing to timely notify the association of the possibility of an increase in student-contact time and workload, ORS 243.698(2); ORS 243.672(1)(f).[3] An

---

[3] ORS 243.672(1) provides, in part:

"It is an unfair labor practice for a public employer or its designated representative to do any of the following:

"* * * * *

"(e) Refuse to bargain collectively in good faith with the exclusive representative.

"(f) Refuse or fail to comply with any provision of ORS 243.650 to 243.782."

ORS 243.698(2) provides that "[t]he employer shall notify the exclusive representative in writing of anticipated changes that impose a duty to bargain."

administrative law judge (ALJ) heard the case and issued a proposed order concluding that predecision bargaining was not required because the change was to the school calendar, a permissive subject. The association objected to that conclusion, and ERB heard the case in April 2009.

As mentioned, under PECBA, public employees have the right to "collective bargaining with their public employer on matters concerning employment relations." ORS 243.662. "Employment relations" is defined—although not exhaustively—by statute. ORS 243.650(7). That definition delineates mandatory and permissive subjects of bargaining. *Portland Fire Fighters' Assoc.*, 245 Or App at 264. In addition, ORS 243.650(7)(e) sets out some specific subjects—including "the school or educational calendar"—that are excluded from "employment relations" for bargaining by school districts; those subjects are permissive. A public employer must "bargain collectively in good faith with the exclusive representative" regarding a mandatory subject of bargaining before making a decision on the subject; a refusal to do so is an unfair labor practice. ORS 243.672(1)(e).

A public employer's duty to bargain is generally limited to changes to employment conditions that are mandatory subjects of bargaining. *See Beaverton Police Assoc. v. City of Beaverton*, 194 Or App 531, 536, 95 P3d 1160 (2004). However, "[e]ven if the changed employment [condition] does not concern a mandatory bargaining subject, the employer may still be required to bargain with the exclusive representative concerning the *impacts* of the change." *Id.* (emphasis in original) (citing *Salem Police Employees Union v. City of Salem*, 308 Or 383, 393, 781 P2d 335 (1989)). That is, if a change on a permissive subject has an impact on a mandatory subject, the public employer may be required to bargain regarding that impact. *Portland Fire Fighters' Assoc.*, 245 Or App at 265 ("[A]n employer breaches the duty to bargain during the term of a [collective bargaining agreement] by unilaterally implementing a decision that * * * derivatively 'impacts' a mandatory subject of bargaining[.]"); *Beaverton Police Assoc.*, 194 Or App at 536; *see also Teamsters Local 670 v. City of Vale*, 20 PECBR 337, 359, *order on recons*, 20 PECBR 388 (2003) (holding

that impact bargaining was appropriate where a permissive decision to close a department had an impact on mandatory subjects).

There is an important procedural difference between bargaining regarding a decision on a mandatory subject and bargaining regarding the impact of a decision on a permissive subject. As the ERB majority explained in its order,

"[a]n employer must bargain about its decision to change a mandatory subject for bargaining *before* making the decision. While the employer need not bargain a decision to change a permissive subject, it is obligated to bargain about the impacts of its decision before it implements the change. *Greater Albany Education Association v. Greater Albany School District No. 8J*, Case No. C-6-80, 5 PECBR 4158 (1980); *East County Bargaining Council (David Douglas Education Association) v. David Douglas School District*, Case No. UP-84-86, 9 PECBR 9184 (1986)."

(Emphasis in original.) That is, an employer may not make a decision on a mandatory subject without bargaining before the decision is made. *Beaverton Police Assoc.*, 194 Or App at 536. By contrast, on a permissive subject, an employer may make a decision without bargaining; then, before implementing the decision, it must bargain regarding the impact of that decision on mandatory subjects. *See Portland Fire Fighters' Assoc.*, 245 Or App at 265.

This case involves both mandatory and permissive subjects. As noted above, ORS 243.650(7) provides that, for school district bargaining, "employment relations" excludes "the school or educational calendar." Thus, the educational calendar is a permissive subject. However, student-contact time and workload are mandatory subjects. *Lincoln Cty. Ed. Assn. v. Lincoln Cty. Sch. Dist.*, 187 Or App 92, 96, 67 P3d 951 (2003); *Gresham Tchrs. v. Gresham Gr. Sch.*, 52 Or App 881, 889, 630 P2d 1304 (1981); *Hillsboro Education Association v. Hillsboro School District*, 20 PECBR 124, 137 (2002).

Before the ALJ and ERB, the association contended that the district had decided, at the outset, to increase

teachers' student-contact time and workload—that is, the district intended to "get more work out of fewer teachers." That decision, it argued, led the team to investigate alternative school schedules, including the one that the board ultimately adopted. Thus, the association argued, the permissive decision to change the schedule might be an impact of the mandatory decision to increase student-contact time and workload, but the reverse was not true: The decision to increase workload and student-contact time preceded the decision to change the schedule.

The ERB majority held as follows:

"According to the Association, the District decided first to increase teacher workload and student contact time and decided second to alter the school calendar. The Association asserts that the District's decision to change mandatory subjects is inextricably linked to a decision to change permissive subjects and must be bargained. We disagree.

"The District faced a number of problems—a significant budget shortfall, higher than usual student failure rates, and increased graduation requirements. The District sought to construct a schedule to address these problems. After studying and evaluating a number of different schedules, the District chose to switch to a trimester schedule. The District's decision to adopt this schedule concerned a permissive subject for bargaining—the educational calendar. At the same time it changed the educational calendar, the District also changed two mandatory subjects for bargaining—it increased teachers' workload and the amount of time they had contact with students. *We find no inextricable link, however, between these two changes. To the contrary, the District could have altered the student calendar in such a way that would not affect teacher working conditions. For example, the District could have created a trimester system and a seven-period day in which students spend additional periods in study halls supervised by non-licensed staff. At most, the District's actions regarding the educational calendar, teacher workload, and student contact time were taken simultaneously.*"

(Emphasis added.) The ERB majority rejected the association's argument that the decision to increase student-contact time and workload caused the decision to change the schedule. But the majority did not stop there. It also found

that there was *no* causal link between the two decisions. Thus, the decision to change the schedule did not cause the decision to increase student-contact time and workload. As the majority noted, the district could have switched to the trimester schedule without increasing student-contact time or workload. According to the majority, "[a]t most," the changes "were taken simultaneously"; there was no causal link between them.

The ERB majority went on, however, to conclude that the district did not have to bargain before it decided to increase the teachers' student-contact time and workload because those increases were mere "impacts" of the decision to change to the trimester schedule:

"We have consistently held that a change in student contact time is an impact of a school district's schedule or calendar change, even when these changes are made simultaneously. In *Greater Albany Education Association v. Greater Albany School District No. 8J*, Case No. C-6-80, 5 PECBR 4158 (1980), a school district altered work assignments for elementary teachers by increasing student contact time and decreasing unassigned (preparation) time. We concluded that assignment of employees was a permissive subject for bargaining, but the District's change in this permissive subject had a 'direct impact on conditions of employment. The issues of pupil contact hours and preparation time are mandatory subjects of bargaining. The District, therefore, had the duty to bargain over the impact of its proposed schedule change * * * before implementing the change.' *Greater Albany School District*, 4165-4166 (footnotes omitted).

"We reached a similar conclusion in *East County Bargaining Council (David Douglas Education Association) v. David Douglas School District*, Case No. UP-84-86, 9 PECBR 9184 (1986). There, the District decided to increase the number of student contact hours for students in grades 4 to 6 by increasing the length of the school day. The union demanded to bargain over the decision to increase student contact time and the impact of the decision. The parties bargained but were unable to reach agreement by the start of the school year. The District implemented the new schedule. We held that the District had the right to make 'the educational policy decision' to change student

schedules without bargaining. However, the District was 'required by the PECBA to bargain in good faith, prior to implementation of the decision, over the effects of that decision on conditions of employment.' *Id.* at 9191 (footnote omitted).

"In subsequent cases, we continued to analyze a change in student contact as an impact of a decision to change student schedules, even where these changes occurred at the same time. In *Salem Education Association v. Salem-Keizer School District 24J*, Case No. UP-132-93, 15 PECBR 302 (1994), we held that the school district violated [ORS 243.672(1)(e)] when it refused to bargain before implementing a new classroom schedule that increased teachers' student contact time. In *Cascade Bargaining Council v. Crook County School District*, Case No. UP-83-94, 16 PECBR 231, 236, *supplemental order*, 16 PECBR 295 (1995), we concluded that a school district violated its good faith bargaining duty when it refused to bargain and implemented changes in student bell schedules, substantially changing student contact time at two elementary schools.

"Consistent with these cases, we hold that the District was not required to bargain about its decision to change the school calendar before it decided to do so. It was, however, obligated to bargain about the mandatory impacts of that decision before it implemented the new trimester system."

(Omission in original; footnotes omitted.)

On review, the association argues that the two parts of the ERB majority's analysis set out above are incompatible. It contends that ERB cases regarding impact bargaining implicitly require at least some causal connection between a decision and its "impact." Here, it asserts, ERB concluded that there was no causal link between the two decisions. Consequently, the decision to increase student-contact time and workload could not be an "impact" of the decision to change the schedule. Rather, the association contends, it was an independent decision to change mandatory subjects. Alternatively, the association contends that the order lacks substantial reason, and consequently, we should reverse and remand for further proceedings.

The association's arguments on review mirror those set out in ERB Chair Gamson's dissent. Gamson argued that the majority's understanding of impact bargaining was incorrect for several reasons. After explaining his view of the policies of the PEBCA and the case law on point, Gamson stated:

"It is thus my view, based on the purposes and policies of the PEBCA and the case law interpreting it, that the impact bargaining exception applies only when a permissive decision cannot be separated from its impacts on mandatory subjects. There is no such inseparable link here. As explained more fully below, the District's permissive decision to implement a trimester schedule did not require it to increase student contact time. That is, it could have adopted a trimester schedule without increasing student contact time. The increased student contact time is instead the result of a separate decision.

"The majority apparently agrees with me on this point. It expressly finds no 'inextricable link' between implementing a trimester system and increasing student contact time for teachers. As the majority correctly observes, the District could have implemented a trimester system without increasing student contact time by, for example, assigning students to additional class periods in a study hall supervised by non-licensed staff. It chose not to. I would add another possibility. The District could have hired more teachers to cover the additional class time, thereby implementing the trimester schedule without increasing student contact time. Again, it chose not to. The District thus had several ways to adopt the trimester schedule without changing teachers' working conditions. In my view, the District was required to bargain before it rejected those options and instead chose to increase the teachers' workload.

"Given that my colleagues determined that the increase in student contact time was due to a separate decision by the school board, and was not a necessary result of a trimester schedule, I cannot discern how they could then conclude that the increase was not a decision at all, but merely an impact. I know of no sense, semantic or otherwise, in which a decision is not a decision."

(Footnotes omitted.)

We agree with the dissent: We cannot discern the ERB majority's reasoning from its opinion. The majority first found that there was no causal relationship between the two decisions. Then it held that, despite that lack of any causal relationship, one decision was an "impact" of the other. Without more explanation, those two items appear incompatible because the concept of "impact" includes causation. That is, if there was no causal connection between the decisions—if they were independent, but simultaneous decisions—then we do not understand how one can be considered an "impact" of the other. Consequently, the order fails our review for substantial reason. *Portland Assn. Teachers*, 171 Or App at 627 (explaining that, in reviewing for substantial reason, "[w]e examine * * * the *reasoning* that leads ERB from the facts that it has found to the conclusions that it draws from those facts" (emphasis in original)).

Thus, the majority's emphasis on the simultaneity of the two decisions is unavailing in light of its finding that there was no link between them. In all of the cases that the majority cites in support of its holding, there was a causal link between the decision and its "impact." *See, e.g., East County Bargaining Council (David Douglas Education Association)*, 9 PECBR at 9189 ("[T]he general *effect* [of the change in the student schedule] was that teacher/student contact time was significantly increased[.]" (Emphasis added.)); *Greater Albany Education Association*, 5 PECBR at 4164 ("The change in student [schedule] *caused* the amount [of teacher preparation time] to be significantly decreased[.]" (Emphasis added.)).

In sum, the majority's opinion lacks substantial reasoning because it finds no causal connection between the decision to change the school schedule and the decision to increase student-contact time and workload, but then concludes that the latter was an impact of the former. Accordingly, we remand for the board to clearly address whether there was a causal connection between the two decisions and, if so, why the connection was such that it obviated the need for the predecision bargaining that would

otherwise be required with regard to student-contact and workload decisions.[4]

Reversed and remanded.

---

[4] Because we conclude that the order lacks substantial reason, we do not reach the association's argument that a change to a mandatory subject is an independent decision, rather than an "impact," where the change is not a necessary consequence of the permissive decision. *See Drew v. PSRB*, 322 Or 491, 500-01, 909 P2d 1211 (1996) (explaining that an "agency's failure to connect permissibly its facts and its holding is fatal to the agency's order").