Argued and submitted October 15, 2014, reversed and remanded
January 27, 2016

AMERICAN FEDERATION OF STATE,
COUNTY AND MUNICIPAL EMPLOYEES,
COUNCIL 75, LOCAL 189,
*Petitioner,*

*v.*

CITY OF PORTLAND,
*Respondent.*

Employment Relations Board
UP4608; A152795

366 P3d 787

Jennifer K. Chapman argued the cause and filed the briefs for petitioner.

Denis M. Vannier, Deputy City Attorney, argued the cause and filed the brief for respondent.

Before Armstrong, Presiding Judge, and Egan, Judge, and Nakamoto, Judge pro tempore.

NAKAMOTO, J. pro tempore.

### NAKAMOTO, J. pro tempore

Petitioner, American Federation of State, County, and Municipal Employees (AFSCME), Council 75, Local #189 (the union), seeks review of a final order of the Employment Relations Board (ERB) dismissing the union's complaint that the City of Portland engaged in an unfair labor practice by unilaterally deciding to charge the union significant fees, based on staff time, for producing information relevant to pending grievances without first bargaining with the union over the practice. On judicial review, the union raises three assignments of error. The union contends that (1) ERB incorrectly concluded that the city's decision to charge the union significant fees for producing the information involves a permissive and not mandatory subject of bargaining; (2) alternatively, ERB failed to give the parties a full evidentiary hearing on the issue of the impacts of the city's decision; and (3) ERB erroneously limited a civil penalty against the city for its dilatory production of requested information to $200.

The threshold issue on the first assignment is whether ERB properly concluded that a prior ERB decision, *South Lane Education Association v. South Lane School District No. 45J*, 1 PECBR 459 (1975), controls and that, under that decision, charges for information related to grievances is a permissive subject for bargaining. We hold that ERB's conclusion is not supported by substantial reason. Because our disposition on the union's first assignment is dispositive, we need not discuss the union's second assignment of error. As for the third assignment of error, we conclude that ERB did not abuse its discretion in limiting the civil penalty. Accordingly, we reverse and remand for ERB to reconsider that part of its order addressing whether the city's decision on charges to the union for the production of information related to pending grievances involved a permissive or mandatory subject of bargaining.

## I. BACKGROUND

To provide context, we begin with an overview of the applicable unfair labor practice statutes framing the parties' disagreement about whether a certain unilateral

decision by the city concerned a subject of mandatory bargaining. Under the Public Employee Collective Bargaining Act (PECBA)—ORS 243.650 to 243.782—a public employer must engage with the exclusive representative of its employees in bargaining over "employment relations." ORS 243.662. Matters that are included in the definition of "employment relations" are "mandatory" subjects of bargaining. *Assn. of Oregon Corrections Emp. v. State of Oregon*, 353 Or 170, 176, 295 P3d 38 (2013). Matters that are excluded from "employment relations" are "permissive" subjects of bargaining. *Portland Fire Fighters' Assoc. v. City of Portland*, 245 Or App 255, 264, 263 P3d 1040 (2011) (citing *Salem Police Employees Union v. City of Salem*, 308 Or 383, 390-91, 781 P2d 335 (1989)).

"Employment relations" is defined—although not exhaustively—by statute. *Three Rivers Ed. Assn. v. Three Rivers Sch. Dist.*, 254 Or App 570, 574, 294 P3d 547 (2013) (citing ORS 243.650(7)). That term "includes, but is not limited to, matters concerning direct or indirect monetary benefits, hours, vacations, sick leave, grievance procedures and other conditions of employment." ORS 243.650(7)(a). Permissive subjects of bargaining are identified in other parts of ORS 243.650(7). As relevant here, ORS 243.650(7)(b) provides that "employment relations" does not include "subjects determined to be permissive, nonmandatory subjects of bargaining by [ERB] prior to June 6, 1995." And, even when the change involves a permissive subject of bargaining, if the change "has an impact on a mandatory subject, the public employer may be required to bargain regarding that impact." *Three Rivers Ed. Assn.*, 254 Or App at 574.

To lawfully change an employment condition that is a mandatory subject of bargaining, the public employer must notify the exclusive representative of the anticipated change and complete the bargaining process. ORS 243.698(2). It is an unfair labor practice for a public employer or its designated representative to "[r]efuse to bargain collectively in good faith" over mandatory subjects of bargaining. ORS 243.672(1)(e); *see also Assn. of Oregon Corrections Emp.*, 353 Or at 176 ("[A] public employer commits an unfair labor practice under ORS 243.672(1)(e) if it refuses to bargain with respect to matters that are included within, and

not excluded by, the definition of 'employment relations.'").
Accordingly, the primary issue in our review of ERB's order
concerns whether the city engaged in an unfair labor prac-
tice by unilaterally changing the *status quo* and refusing to
bargain over a mandatory subject of bargaining.

We relate the relevant facts, which are undis-
puted, and the procedural history as they appear in ERB's
orders and the record. *See Meltebeke v. Bureau of Labor and
Industries*, 322 Or 132, 134, 903 P2d 351 (1995) (uncon-
tested findings are adopted on judicial review). We begin
with the city's historical charges to the union for producing
documents.

Since 2001, the city has had a policy, its "Public
Records Fee Schedule," regarding charges for time that city
staff spend responding to public records requests. The union
had notice of this policy and any changes made to it. The
union did not demand to bargain over the public records pol-
icy, but it also did not agree to the policy's applicability to
the union's requests for information under PECBA. Under
the 2007-2008 version of the public records policy, the stan-
dard fee for obtaining photocopies of city documents was 25
cents per copy, which covered the cost of some staff time.

Before 2004, the city had generally charged the
union, if it charged the union at all, five cents per photocopy
to produce documents requested under PECBA. By 2004,
though, the city had begun charging the union 25 cents per
page to produce documents in response to some requests for
information under PECBA. At least until the 2008 events
at issue in this case, the city had continued its practice of
(1) charging the union nothing for small quantities of doc-
uments and (2) charging nothing for some easy-to-provide
collections of documents. The record in this case indicates
that, between 2004 and 2008, the city never charged the
union more than $172 per request for producing documents.

The city's charges for producing documents to the
union significantly increased in 2008, when the city began
charging the union for staff time to respond to document
requests. In June of that year, the city suspended one of
its employees represented by the union. The union filed a

grievance with the city and requested information, including documents reflecting discipline that similarly situated employees had received, as well as copies of applicable rules and policies. A month after the union's information request, the city provided the union with a cost estimate in the amount of $200 for production of the documents. The union objected to that amount.

In July 2008, the city terminated a different employee represented by the union. As it pursued a grievance on behalf of the second employee, the union submitted a series of information requests to the city. The city promptly provided some of the information requested and sent the union a bill for $41.25 for the production. The cover letter with the invoice stated that the amount reflected "the cost associated with this production of documents" and that a copy of the fee schedule—the Public Records Fee Schedule—was available on the city's website. That was not the first time that the city had charged the union a nominal fee for the production of documents. That was, however, the first time that the city explicitly informed the union in writing that its charges for complying with information requests were based on the city's Public Records Fee Schedule.

The city later supplemented its production of documents to the union. It also sent the union an invoice for $622.08. The union objected to the charge on the ground that the city changed the *status quo*, and the union demanded that the city "provide the information at no charge or nominal charge," as the city "has done in the past."

In addition to objecting to the amount that the city was charging for production, the union objected to the city's delays in producing documents that the union had requested. In the case of the terminated employee, a month and a half after the union requested documents to assist in its representation of the employee, the city, for the first time, informed the union that it needed clarification concerning the information request. With respect to the suspended employee, the city notified the union that it had questions about its document requests two months after the request was made and again three months after the request was made.

In December 2008, the union filed its unfair labor practice complaint with ERB. The union's amended complaint alleged three PECBA violations: (1) a violation of ORS 243.672(1)(e) that occurred when the city began charging the union for the cost of staff time needed to produce information; (2) a violation of ORS 243.672(1)(e) that occurred when the city failed to produce information the union requested related to the grievances; and (3) a violation of ORS 243.672(1)(b) that occurred when the city imposed fees for information requested by the union and allegedly interfered with the administration of the union.

An administrative law judge (ALJ) heard the case and issued a proposed order. The ALJ relied on *Lebanon Education Association/OEA v. Lebanon Community School District*, 22 PECBR 323 (2008), the controlling ERB precedent, in which ERB had held that employer charges for production of documents concerned a mandatory subject for bargaining delineated in ORS 243.650(7)(a), namely, direct or indirect monetary benefits. The ALJ concluded that the city's charges for providing information to the union concerned a mandatory subject of bargaining and, accordingly, the city's unilateral decision to begin charging significant amounts for document production was a violation of ORS 243.672(1)(e). The ALJ also imposed a $1,000 civil penalty against the city after finding that the city's delays in providing the union with documents were repetitive and egregious, especially in light of ERB's decision in *Lebanon*.

The city filed objections to the proposed order with ERB. The union's position before ERB was that the city's long-standing practice of providing information to the union to investigate grievances at no cost or at nominal photocopying cost, *i.e.*, without charging for legal, paralegal, or staff time costs, was the *status quo* and that the city unilaterally changed it in 2008 without bargaining. According to the union, the city's change in practice concerned a mandatory subject of bargaining.

After hearing oral argument, ERB issued its final order in June 2012. ERB concluded that the city had violated ORS 243.672(1)(e) when it "failed to timely respond to [the union's] requests for information." ERB dismissed the union's

other allegations, concluding that the city had not "unilaterally change[d] the *status quo* in violation of ORS 243.672(1)(e) by charging [the union] for the cost of staff time needed to respond to [the union]'s requests for information for the * * * grievances." ERB concluded that the city's decision to "bill for the cost of legal staff time needed to respond to its requests for information" relevant to the grievances did not violate ORS 243.672(1)(e), because that action concerned a permissive subject, namely, "employer charges for production of documents." In reaching that conclusion, ERB, *sua sponte*, overruled *Lebanon*. ERB concluded that *Lebanon* was erroneous for two reasons: (1) that decision was based on ERB's "mistaken application of the [PECBA] statutory scheme and failure to acknowledge relevant case precedent" and (2) because charging a union for information did not concern a "direct or indirect monetary benefit." ERB explained that, in *Lebanon*, it had overlooked its earlier 1975 determination in *South Lane* that charging a union for information constituted a permissive subject of bargaining. ERB also dismissed the union's claim that the city's failure to timely respond to the "information requests interfered with the administration or existence of the Union in violation of ORS 243.672(1)(b)." Finally, ERB reduced the amount of the civil penalty, ordering the city to pay $200 to the union.

Board Member Gamson, the labor representative on the board, dissented in part, disagreeing with the majority's conclusions that the amount the city charges for document production was a permissive subject of bargaining and that the amount of the civil penalty should be reduced. He stated his view that, contrary to the majority's conclusion, the city's change in practice was a mandatory subject of bargaining:

> "The amount of money a union must pay an employer for copies of documents obviously concerns 'direct or indirect monetary benefits,' a subject the legislature expressly made mandatory for bargaining in ORS 243.650(7)(a). My colleagues conclude otherwise. In doing so, they overrule a recent, carefully considered, and unanimous Board decision."

The union filed a motion for reconsideration of ERB's order, which ERB granted. The union's motion specifically

addressed ERB's decision that the charges for information in this case were not a mandatory subject of bargaining. For example, the union argued that "[c]harging for information requests implicates mandatory subjects of bargaining in several ways, including in many ways not addressed by the Order" and that the "extent to which information has to be provided in these circumstances clearly falls within the scope of 'grievance procedures' identified under ORS 243.650(7) as a mandatory subject of bargaining."

In its Order on Reconsideration, however, ERB stated that it did not consider the union's challenge to be against ERB's "conclusion that the City's *decision* to charge the [u]nion for information involved a permissive subject for bargaining." Instead, ERB characterized the union's challenge as one solely about whether "the City should be required to bargain about the *impacts* of that decision on mandatory subjects of bargaining." (Emphasis in original.) ERB went on to reject the union's "impact" argument, because it was not persuaded by the union's evidence, which it viewed as speculative.

On reconsideration, ERB adhered to its original order. On judicial review, the union challenges both ERB's initial order and its order on reconsideration.

## II.  DUTY TO BARGAIN

In its first assignment of error, the union challenges ERB's determination that the city was not required to bargain over its decision to charge the union for the production of documents. We review ERB's determination that a subject is mandatory or permissive under PECBA for legal error. ORS 183.483(8)(a); *Beaverton Police Assoc. v. City of Beaverton*, 194 Or App 531, 535, 95 P3d 1160 (2004). We further review whether substantial reason supports ERB's orders. In doing so, we examine not only the evidence that supports ERB's findings but also the reasoning that leads ERB from the facts that it has found to the conclusions that it draws from those facts. *Drew v. PSRB*, 322 Or 491, 499-500, 909 P2d 1211 (1996); *Portland Assn. Teachers v. Mult. Sch. Dist. No. 1*, 171 Or App 616, 626-27, 16 P3d 1189 (2000) (applying standard to an ERB order). We conclude

that ERB's determination and its orders are not supported by substantial reason.

## A. *Arguments on Appeal*

As mentioned, the union argues that charges associated with the production of documents related to pending grievances concern a mandatory subject for bargaining under ORS 243.650(7)(a). The union identifies the appropriate subject as "charges for information required to be produced under PEBCA" and argues that it is *per se* mandatory for bargaining under ORS 243.650(7)(a) as "direct or indirect monetary benefits" and "grievance procedures." *See Wasco County v. AFSCME*, 46 Or App 859, 864-65, 613 P2d 1067 (1980) (upholding ERB's authority to adopt "violation *per se*" analysis of unilateral changes). ERB's *per se* model follows an analogous rule adopted by the National Labor Relations Board to enforce the duty to "bargain collectively" under section 8(a)(5) of the National Labor Relations Act. *Assn. of Oregon Corrections Emp.*, 353 Or at 177 n 6.

Relying on *Beaverton Police Assoc.*, the union alternatively argues that, even if the change involved a permissive subject of bargaining, the city's charges have an impact on at least two mandatory subjects of bargaining, namely, "direct or indirect monetary benefits" to employees and "grievance procedures," and, therefore, the city was required to bargain. The union also contends, in the alternative, that the city was required to bargain under the balancing test codified in ORS 243.650(7)(c) ("After June 6, 1995, 'employment relations' does not include subjects that [ERB] determines to have a greater impact on management's prerogative than on employee wages, hours, or other terms and conditions of employment.").

As for *South Lane*, the decision on which ERB relies for its conclusion that the charges in this case involved an established permissive subject of bargaining, the union argues that it does not control because the contract proposal at issue in that case was exceedingly broad. According to the union, the proposal in *South Lane* would have required the employer to furnish at no cost any information that the labor representative believed was necessary for its function. The

union contends that, in contrast, this case does not involve a broad grant of discretion to the union to demand information; rather, it concerns a limited amount of information directly related to pending grievances of its members.

In response, the city argues that the union did not exhaust its administrative remedies or preserve the issue whether charging for staff time to respond to information requests is a mandatory subject of bargaining under PECBA. On the merits, the city argues that ERB properly concluded that charging reasonable costs associated with the production of requested information is a permissive subject of bargaining under PECBA because ORS 243.650(7)(b) freezes the status of the subject at issue as permissive given that ERB had already decided before 1995, in *South Lane*, that charging for information is a permissive subject of bargaining.

B. *Exhaustion and Preservation*

Before we consider the union's arguments, we first address and reject the city's contention that the union did not exhaust its remedies or preserve its argument that the charges for information relating to pending grievances is a mandatory subject of bargaining under PECBA. "The doctrine of exhaustion [of remedies] applies when a party, without conforming to the applicable statutes or rules, seeks judicial determination of a matter that was or should have been submitted to the administrative agency for decision." *Outdoor Media Dimensions Inc. v. State of Oregon*, 331 Or 634, 661, 20 P3d 180 (2001). The exhaustion doctrine requires that the issues of the dispute be submitted to the administrative agency for consideration of the merits of the dispute. *Trujillo v. Pacific Safety Supply*, 336 Or 349, 368, 84 P3d 119 (2004). "It goes without saying that for an administrative remedy to be 'exhaustible' it must be available." *Fifth Avenue Corp. v. Washington Co.*, 282 Or 591, 618, 581 P2d 50 (1978).

Here, the union met the exhaustion requirement by first presenting the particular challenges it intended to raise on judicial review to ERB. *Ayres v. Board of Parole*, 194 Or App 429, 435, 97 P3d 1 (2004). The union afforded ERB an opportunity to rule on the substance of the dispute through

the union's motion for reconsideration. In that motion, the union argued to ERB that the charges for information was a mandatory, not permissive, subject of bargaining. Moreover, the union had no earlier opportunity to raise the issue because ERB's decision to overrule *Lebanon*, the controlling precedent, was made *sua sponte* in its order, without prior notice to the parties. Accordingly, the union met the exhaustion requirement.

The city also argues that the union raised only an argument concerning the "impacts" of the city's decision and not its argument on appeal, namely, that charges for information is a mandatory subject of bargaining. As support, the city points to ERB's characterization of the union's argument.

We disagree with the city's and with ERB's characterization of the union's arguments in the union's motion for reconsideration. The record shows that the union explicitly requested that ERB reconsider its position that the city's charging of staff time to respond to information requests related to grievances was a permissive subject of bargaining. In its motion for reconsideration, the union argued that the "extent to which information has to be provided in these circumstances clearly falls within the scope of 'grievance procedures' identified under ORS 243.650(7)(a) as a mandatory subject of bargaining." The union further stated in its motion for reconsideration that, "if [ERB] concludes that the information request fees are not *per se* mandatory subjects of bargaining as outlined above—the [u]nion respectfully requests that [ERB] find that charging fees for information requests is nevertheless a topic that must be bargained." Thus, the union directly challenged the board's conclusion that the city's decision to charge the union for information involved a permissive subject for bargaining. Its "impact" argument was an alternative to its main argument that the decision to charge involved a mandatory subject of bargaining.

C.  *Sufficiency of ERB's Orders*

We turn next to the question whether ERB properly concluded that the charges for information concerned a permissive subject of bargaining. As we explain below, we are

unable to fully review ERB's orders because ERB failed to supply sufficient reasoning in support of its conclusions. *See Drew*, 322 Or at 500-01 (explaining that an "agency's failure to connect permissibly its facts and its holding is fatal to the agency's order"); *see also Portland Assn. Teachers*, 171 Or App at 645 (noting that the court was unable to meaningfully review ERB's conclusion because ERB's order "le[ft] considerable uncertainty as to the precise basis of and reasoning for its conclusion").

When reviewing an allegation of unlawful unilateral change, ERB engages in a three-part analysis in the most appropriate order for each case: "(1) whether an employer made a change to an 'established practice,' often referred to as the 'status quo'; (2) whether the change concerned a mandatory subject of bargaining; and (3) whether the employer exhausted its duty to bargain." *Assn. of Oregon Corrections Emp.*, 353 Or at 177; *911 Professional Communications Employees' Assn. v. City of Salem*, 26 PECBR 518, 524 (2015) ("If the employer did change the status quo, we then decide whether the change concerns a mandatory bargaining subject." (Citing *Lebanon*, 22 PECBR at 360.)). In this case, ERB addressed whether the city's change in its charges to the union involved a mandatory subject of bargaining. The primary focus of our discussion below concerns the parts of ERB's orders identifying the subject of the change.

1. *Identification of the subject of the unilateral change*

Although ERB identified the issues in the matter before it by focusing on the information that the union requested in connection with grievances under PECBA, ERB's characterization of the subject was not so focused. In its initial order, ERB concluded that the subject at issue in this case is "charging for information" or "charges for information" and not, as the union argued, charging for information relevant to grievances. ERB, however, did not explain why it determined that the subject was less specific than what the union had urged was the proper subject.

As noted above, the union moved for reconsideration of ERB's order, contending, among other things, that the disputed subject concerned "grievance procedures," a

*per se* mandatory subject of bargaining. In addition, the union argued that the disputed subject addressed a PECBA policy aimed at facilitating effective collective bargaining. The union further argued that, even in *South Lane*, ERB had recognized that "provisions which assist the incumbent labor organization in its duty of fair representation are within the scope of mandatory bargaining[.]" *South Lane*, 1 PECBR at 474. Moreover, the union argued that ERB had not explained how the proposal in *South Lane*, which the union argued was "much broader," "much more open to differing interpretations," and "much more subjective" than what the union had requested from the city in this case, was similar to the identified subject in this case. On that point, the union explained that, "[i]n contrast, the information requested here was objectively necessary for the [u]nion to respond to and investigate pending disciplinary grievances."

Despite the union's arguments, in its order on reconsideration, ERB again failed to explain why the disputed subject did not concern grievance-related requests for information through its order on reconsideration. ERB slightly restated the subject as "employer charges for production of documents requested under [PECBA]"; however, ERB did not address the grievance-related nature of the union's document requests that gave rise to the city's charges.

ERB's characterization of the subject can completely alter the outcome of the analysis concerning whether the subject requires bargaining. For example, in *Springfield Police Assn. v. City of Springfield*, 16 PECBR 712, 721 (1996), ERB closely examined the scope of the "Staleness of Personnel Records" proposal at issue. The city argued that the proposal addressed the subject "contents of personnel files," which ERB had held to be a permissive subject for bargaining before 1995. *Id.* ERB acknowledged that the last sentence of the proposal concerned the contents of a personnel file. *Id.* However, ERB noted that proposal also addressed two subjects—"disciplinary standards and procedures" and "minimum fairness relating to personnel files"—that ERB had previously held to be mandatory. *Id.* at 722. For that reason, ERB held that the proposal at issue was "entirely mandatory." *Id.*

In this case, ERB's characterization of the subject at issue is pivotal. ERB's orders do not explain why the subject at issue does not concern information needed for representing members during grievances, as the union urges. Such a grievance-related subject, in turn, may be a *per se* mandatory subject for bargaining under ORS 243.650(7)(a) as a matter of law. *See Springfield Education Assn. v. School Dist.*, 290 Or 217, 233, 621 P2d 547 (1980) (stating that whether any subject is like or unlike the listed matters in ORS 243.650(7)(a) is one of interpretation, not of discretion). ERB fails to support its interpretation of the disputed subject with sufficient reasoning other than pointing to *South Lane* and stating that that case forecloses further discussion. Because ERB failed to address the union's contentions regarding the proper understanding of the subject at issue and to explain the reasoning for its characterization of the subject at issue in general terms, we conclude that ERB's orders lack substantial reason.

## 2. *Mandatory or permissive subject for bargaining*

After identifying the subject of the change, ERB did not determine whether the subject was specifically included in the definition of "employment relations" under ORS 243.650(7)(a). Instead, ERB considered whether the disputed subject was mandatory by discussing and overruling its 2008 decision in *Lebanon* and by determining that its 1975 decision in *South Lane* controlled. In light of its failure to address why the subject at issue here did not concern grievances and "grievance procedures," ERB did not adequately explain why *South Lane* was controlling.

In its order in this case, ERB recognized that it had held in *Lebanon* that charging a union for the costs involved in responding to information requests concerned a mandatory subject of bargaining. However, instead of applying *Lebanon*, ERB decided, *sua sponte*, to reject its holding in *Lebanon*, because it believed that it had erred in reaching that conclusion. ERB pinpointed two errors: First, ERB concluded that *Lebanon* was wrongly decided because it had incorrectly "conflated a benefit to the union (potential for lower costs to the organization) with a benefit to employees (reduced union dues and fair share fee payments)" to reach

its conclusion that "charges for information requests constitute a 'direct or indirect monetary benefit' to bargaining unit members." Second, ERB pointed to a failure to take into account ORS 243.650(7)(b), which freezes the status of subjects as permissive if ERB made that determination before 1995, and its pre-1995 precedent, *South Lane*.

In *South Lane*, ERB had concluded that the following broad bargaining proposal was a permissive subject for bargaining:

"A.   *Information.*   *Upon request, the Board agrees to furnish without cost to the Association all information the association believes necessary for its functioning as exclusive bargaining representative.*"

*South Lane*, 1 PECBR at 473 (italics in original). ERB had provided a one sentence explanation in support of that conclusion: "Because paragraph[] A*** involve[s an] area[] within the exclusive prerogative[] of management," it is a "permissive subject[] for bargaining." *Id.* at 474.

In the initial order at issue here, ERB concluded that *South Lane* was dispositive. However, it is unclear what exactly was deemed a permissive subject in *South Lane*, due to the broad nature of the proposal, and whether the subjects at issue in *South Lane* and in this case concern the same type of information. Because ERB did not explain why it characterized the subject at issue in this case in the way that it did, ERB's reliance on *South Lane* does not fully explain why the subject at issue in this case, like the broad proposal in *South Lane*, must be considered a permissive subject of bargaining. Thus, ERB's conclusion that *South Lane* is dispositive lacks substantial reason.

We do not express an opinion on whether charging a union for the production of information related to pending grievances concerns "grievance procedures." That is for ERB to decide, in the first instance, on remand. And, we do not decide the union's second assignment of error.[1] We set aside

---

[1] On remand, should ERB reach the union's argument concerning the potential impacts of the city's decision to charge for staff time to respond to document requests related to grievances, the union will have an opportunity to make a more specific showing of need for an evidentiary hearing.

the orders and remand the case to ERB to fully address the disputed subject and the union's contention that the city was required to bargain concerning the change in the *status quo*.

## III.  CIVIL PENALTY

The union also asks that we address an additional issue—the $200 civil penalty that ERB assessed against the city. In its final assignment of error, the union challenges the amount of ERB's civil penalty against the city for dilatory production of information. The union argues that (1) the civil penalty is not adequate "given the egregiousness and repetitive nature of the City's PECBA violations regarding information requests" and (2) the penalty is not consistent with civil penalties that ERB has awarded in other cases.[2] The city defends ERB's decision, arguing that ERB chose a penalty within its discretion under the statute, ORS 243.676(4), and that it was an adequate sanction under the circumstances of this case. We agree with the city.

Under ORS 243.676(4)(a)(A),

> "[t]he board *may* award a civil penalty to any person as a result of an unfair labor practice complaint hearing, in the aggregate amount of *up to $1,000 per case*, without regard to attorney fees, if:
>
> "The complaint has been affirmed pursuant to subsection [ORS 243.676(2)] * * * and the board finds that the person who has committed, or who is engaging, in an unfair labor practice has done so repetitively, knowing that the action taken was an unfair labor practice and took the action disregarding this knowledge, or that the action constituting the unfair labor practice was egregious[.]"

(Emphases added.) In the exercise of its discretion, ERB must either act consistently with its prior practice or else explain why it has not done so. *See* ORS 183.482(8)(b)(B).

Here, in its order, ERB concluded that the city "violated ORS 243.672(1)(e) when it failed to respond in a timely manner to [the union's] requests for material relevant to the

---

[2] The city's assertion that the union's argument is not preserved lacks merit. The union raised the issue with the board in its motion for reconsideration, the only time it could have raised that argument.

\*\*\* grievances." ERB also determined that, although the city's conduct was "repetitive," the city "did respond promptly and appropriately to many of [the union's] requests." ERB further determined that "the City's actions were not part of a continuing course of illegal conduct, and were perpetrated by three City employees rather than a large number of personnel." In addition, ERB concluded that the city's conduct was not "egregious" and that the city did not "knowingly disregarded the law." Considering those factors, ERB concluded that a civil penalty of $200 was appropriate.

"We can set ERB's remedy aside only if it has exercised its authority in a manner that does not reasonably effectuate the purposes of PECBA." *OSEA v. Lake County School District*, 93 Or App 481, 486, 763 P2d 160 (1988); *see also Gresham Tchrs. v. Gresham Gr. Sch.*, 52 Or App 881, 893-95, 630 P2d 1304 (1981). In this case, ERB provided an adequate explanation for the $200 penalty it assessed, and the civil penalty imposed is consistent with civil penalties that ERB has awarded in other cases in which the public employer's actions were found to be repetitive but not egregious.[3] Accordingly, we conclude that ERB did not abuse its discretion.

Reversed and remanded.

---

[3] The union also argues that ERB should assess a larger penalty to account for the city's additional PECBA violation outlined in the union's first assignment of error. Given that we are remanding for ERB's reconsideration based on that assignment of error, we do not decide the issue of any additional civil penalty for that alleged unfair labor practice; however, we note that our disposition does not foreclose ERB from assessing an additional penalty on remand.